Joan C. HOWARD, Plaintiff–Appellant,

v.

EVEREX SYSTEMS, INC., Defendant,

Steven L.W. Hui; Michael C.Y. Wong; Wong's International (Holdings) Limited; Gatcombe Corp. N.V., Defendants–Appellees.

No. 98–17324.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 17, 2000

Filed Sept. 29, 2000

Charles R. Peifer (argued), Browning & Peifer, P.A., Albuquerque, New Mexico, and James Browning, Patrick K. Slyne and Jules Brody (on brief), Stull, Stull & Brody, New York, New York, Joseph H. Weiss and David C. Katz (on brief), Kevin Yourman, Jordan Lurie, Weiss & Yourman, New York, New York, Michael Braun, Stull, Stull & Brody, Los Angeles, California, for the plaintiff-appellant.

Robert P. Varian, San Francisco, California, for defendant-appellee Steven L.W. Hui. Stephen R. Farrand, San Francisco, California, for defendants-appellees Wong's International (Holdings) Limited, and Gatcombe Corp., N.V.

Christopher Paik, Securities and Exchange Commission, Washington, DC, for amicus curiae Securities and Exchange Commission.

Before: SNEED, SCHROEDER, and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

Joan C. Howard ("Howard") appeals from the district court's decisions granting dismissal, summary judgment, and judgment as a matter of law ("JMOL") in favor of defendants Stephen L.W. Hui ("Hui"), Michael C.Y. Wong ("Wong"), Wong's International (Holdings) Ltd. ("Wong's International"), and Gatcombe Corp. ("Gatcombe") in her action pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a). Howard, a purchaser of stock in the computer manufacturer, Everex Systems, Inc. ("Everex"), claims that defendants artificially inflated the price of Everex stock by falsely representing that the company had achieved profitability and consecutive profit increases during the first three quarters of fiscal year 1992. The district court had jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. §§ 1331 and 1337(a). We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

## I. Factual and Procedural Background

Everex was founded in 1983 and designed, manufactured, and sold computers and computer peripheral products. Hui served as the Everex's CEO and Chairman of the Board during the entirety of the "Class Period."[1] Wong served as a director for part of the class period. Wong indirectly owned a large amount of stock in Everex through his holdings in Wong's International.

In September 1992, Howard brought a class action[2] pursuant to §§ 10(b) and 20(a) of the Exchange Act,[3] claiming that

---

1. The "Class Period" covers purchases of Everex common stock between November 21, 1991, and July 28, 1992.

2. The class of Everex stock purchasers during the class period was eventually certified by the district court.

3. Section 10(b) states:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . .
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe.
15 U.S.C. § 78j.
 Section 20(a) states:
 Every person who, directly or indirectly, controls any person liable under any provision of this chapter . . . shall also be liable

Everex, Hui, and Wong made material misrepresentations to the public during the first three quarters of fiscal year 1992 (July 1991–March 1992) regarding Everex's profitability. Howard alleges that the misrepresentations were made to secure bank financing, conceal alleged violations of a loan covenant, and artificially inflate the price of Everex stock.

In January 1993, Everex filed for bankruptcy and all actions against it were automatically stayed. Later, Howard amended her complaint and alleged §§ 10(b) and 20(a) violations by Wong's International and Gatcombe, which were dismissed for lack of personal jurisdiction.[4] The district court also dismissed the § 10(b) claim against Wong for lack of particularity.

After discovery was completed, the district court granted summary judgment in favor of Wong on the § 20(a) claim. In particular, the district court found that Wong did not participate in the preparation of the allegedly false financial statements and was not a control person within the ambit of § 20(a).

During trial, the district court granted JMOL in favor of Hui on the § 10(b) claim on the ground that Hui did not make a statement within the meaning of § 10(b) and did not act with the requisite level of scienter. Additionally, the district court granted JMOL to Hui on the § 20(a) claim on the basis that Hui was not a control person of Everex, essentially because Hui did not supervise or participate in the preparation of the financial statements at issue and did not think any of the numbers in the statements were incorrect.

On November 9, 1998, the district court entered a final judgment that dismissed all claims with prejudice. Howard timely appealed.

## II. Standards of Review

■ Dismissal of claims on the pleadings are reviewed de novo, see *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir.1998), treating the complaint's allegations as true and drawing all reasonable inferences in the plaintiff's favor, *see Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir.1999).

■ We conduct a de novo review of the district court's grant of summary judgment. *See Morris v. Newman (In re Convergent Technologies Securities Litigation),* 948 F.2d 507, 512 (9th Cir.1991). In so doing, we must be mindful that "[a]lthough materiality and scienter are both fact-specific issues which should ordinarily be left to the trier of fact, summary judgment may be granted in appropriate cases. Summary judgment may be defeated in a securities fraud derivative suit only by showing a genuine issue of fact with regard to a particular statement by the company or its insiders." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 500 (9th Cir. 1992) (internal quotation marks and citations omitted).

■ District court rulings made in support of a JMOL are reviewed de novo. *See Saman v. Robbins,* 173 F.3d 1150, 1155 (9th Cir.1999). In reviewing a JMOL, we must view the evidence in the light most favorable to the non-moving party and draw every reasonable inference therefrom in the non-moving party's favor. *See Amarel v. Connell,* 102 F.3d 1494, 1521 (9th Cir.1996). "If conflicting inferences may be drawn from the facts, the case must go to the jury." *Pierce v. Multnomah County,* 76 F.3d 1032, 1037 (9th Cir. 1996) (internal quotation marks and citations omitted).

---

jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

4. Additionally, plaintiff contends that the district court dismissed § 10(b) claims against Hui not related to Everex's financial statements. As discussed below, we find that plaintiff never asserted such claims. *See* Part III. G, *infra.*

██ Evidentiary rulings are reviewed for an abuse of discretion. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir.1999). Finally, we review determinations of personal jurisdiction de novo. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1319–20 (9th Cir.1998).

## III. Discussion

**A. The district court erred by granting JMOL on the § 10(b) claim against Hui on the ground that he did not "make" a statement within the meaning of § 10(b) and Rule 10b–5.**

██ As the Securities and Exchange Commission ("SEC") notes in its amicus curiae brief, the issue presented is whether a corporate official (here, the CEO) who, acting with scienter, signs a SEC filing containing misrepresentations, "make[s]" a statement so as to be liable as a primary violator under § 10(b). *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177–78, 191–95, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (holding that only the SEC can bring aiding and abetting actions under § 10(b)). Although not totally clear on the issue, the district court appeared to hold that because Hui did not participate in the drafting of the allegedly false financial statements, he did not make a statement within the meaning of § 10(b). We conclude that the district court erred in making this determination.[5]

First, when a corporate officer signs a document on behalf of the corporation, that signature will be rendered meaningless unless the officer believes that the statements in the document are true. In *AUSA Life Ins. Co. v. Dwyer (In re JWP Inc., Securities Litigation)*, 928 F.Supp. 1239 (S.D.N.Y.1996), for example, the court held that a director who has the requisite level of scienter and signs a fraudulent Form 10–K can be liable as a

primary violator of § 10(b) for making a false statement. *See id.* at 1255–56; *cf. F.N. Wolf & Co., Inc. v. Estate of Neal*, No. 89 Civ. 1223(CSH), 1991 WL 34186, at *8 (S.D.N.Y.1991) (holding that a "director signing a document filed with the SEC … 'makes or causes to be made' the statements contained therein" under § 18(a) of the Exchange Act).

Second, we have held in analogous contexts that signers of documents should be held responsible for the statements in the document. *See United States v. Gomez–Gutierrez*, 140 F.3d 1287, 1288–89 (9th Cir.) (noting that "the affixing of a signature is not a mere formality, but rather signifies that the signer has read the document and attests to its accuracy"), *cert. denied*, 525 U.S. 889, 119 S.Ct. 206, 142 L.Ed.2d 169 (1998).

Third, by placing responsibility in corporate officers to ensure the validity of corporate filings, investors are further protected from misleading information. *See Central Bank*, 511 U.S. at 171, 114 S.Ct. 1439 ("Together, the Acts embrace a fundamental purpose … to substitute a philosophy of full disclosure for the philosophy of *caveat emptor*."). Granted, *Central Bank* held that private causes of action could not be brought against aiders and abettors, as opposed to primary violators. *See id.* at 191, 114 S.Ct. 1439. There is a significant difference, however, between mere participation in a scheme to misrepresent and those directly attesting to the truth of a statement by *making* (in the ordinary sense) that very statement. By standing behind a statement, the public assumes that they can trust the word of the maker of that statement. *See Great Sweet Grass Oils, Ltd.*, 37 S.E.C. 683, 684 n. 1 (1957) (finding that the requirement that issuers file reports with the SEC "necessarily embodies the requirement that such reports be true and correct"), *aff'd*, 256 F.2d 893 (D.C.Cir.1958); *see also*

---

5. Conversely, we have held that substantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even though that participation might not lead to the actor's actual making of the statements. *See Dannenberg v. PaineWebber Inc. (In re Software Toolworks Inc. Securities Litigation)*, 50 F.3d 615, 628–29 & n. 3 (9th Cir.1994).

*SEC v. IMC Int'l, Inc.,* 384 F.Supp. 889, 893 (N.D.Tex.) ("The reporting provisions of the Exchange Act are clear and unequivocal, and they are satisfied only by the filing of complete, accurate, and timely reports."), *aff'd,* 505 F.2d 733 (5th Cir. 1974).

Key corporate officers should not be allowed to make important false financial statements knowingly or recklessly, yet still shield themselves from liability to investors simply by failing to be involved in the preparation of those statements. Otherwise, the securities laws would be significantly weakened, because corporate officers could stay out of the loop such that, under *Central Bank,* only the SEC could bring suit against them in an individual capacity for their misrepresentations. *See Bateman, Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985) (quoting *J.I. Case Co. v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)) (noting that private investors "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to Commission action' ").

Defendants' counter-arguments basically rely on the assertion that Hui lacked scienter, rather than directly disputing plaintiff's and the SEC's contentions. First, in all of the cases relied upon by defendants for the claim that a mere signature is not sufficient for § 10(b) liability, there was either no showing of scienter or the defendant was an *outside* director. *See Atlantis Group, Inc. v. Rospatch Corp. (In re Rospatch Securities Litigation),* 760 F.Supp. 1239, 1255, 1264 (W.D.Mich.1991) (finding that the plaintiff "simply has not adequately pleaded that any or all of the Outside Directors knew or recklessly failed to know of any ongoing fraud at Rospatch"); *In re Ross Systems Securities Litigation,* No. C–94–0017–DLJ, 1994 WL 583114, at *6 (N.D.Cal.1994) (noting that the group pleading theory is not applicable to outside

directors who signed public documents); *In re Gupta Corp. Securities Litigation,* 900 F.Supp. 1217, 1241 (N.D.Cal.1994) (same); *cf. In re Browning–Ferris Indus. Inc. Securities Litigation,* 876 F.Supp. 870, 911 (S.D.Tex.1995) (noting that defendants' signing of document was not sufficient for liability but failing to comment on whether, by so signing, a statement had been made).

Second, defendants' assertion that *In re JWP* does not discuss the role that a signature alone should play under § 10(b) is far too narrow a reading. In assessing whether the audit committee members could be liable as primary violators, the *In re JWP* court noted:

> The alleged misrepresentations that the audit committee defendants actually made include statements made in JWP's annual Forms 10–K, which were signed by the audit committee defendants. They also include statements that were directly authorized by the Board of Directors-for example, statements found in the note agreements and in JWP's proxy statements. They do not include press releases issued by JWP's management or other statements that were not expressly authorized by the Board of Directors. Therefore, the audit committee defendants are entitled to summary judgment dismissing the plaintiffs' § 10(b) claims to the extent that those claims are based on alleged misrepresentations that the audit committee defendants did not make.

928 F.Supp. at 1256 (citations omitted). Thus, the *In re JWP* court stressed the signing and authorization of statements as critical in determining whether directors could be liable as primary violators under § 10(b).

Third, defendants additionally misread *Wolf* for the proposition that a signature might be sufficient for the making of a statement under § 18(a) but not under § 10(b).[6] *Wolf* presented the question of

---

6. Section 18(a) states:

 (a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to

this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which

whether an outside director could be liable for signing false statements under § 18(a). *See Wolf,* 1991 WL 34186, at *8. The *Wolf* court reasoned that although an outside director might not be liable under § 10(b), he might be liable under § 18(a). *See id.* The court made this distinction on the ground that § 10(b) includes a scienter element but § 18(a) does not. *See id.* Here, Hui was an inside director; thus, *Wolf*'s distinction between § 10(b) and § 18(a) fades away. Further, § 18(a) is not a sufficient replacement for suits under § 10(b) because courts have required a purchaser's actual reliance on the fraudulent statement under § 18(a), as opposed to the constructive reliance, or fraud-on-the-market, theory available under § 10(b). *See Rudnick v. Franchard Corp.,* 237 F.Supp. 871, 872 (S.D.N.Y.1965); *see generally* Harold S. Bloomenthal, *Securities and Federal Corporate Law* § 7.51 (1999) (listing cases).

Because Hui admittedly signed the statements alleged to be false, the district court erred in making the blanket holding that Hui could not be a primary violator, regardless of his scienter.

**B. *The evidence is sufficient to support a verdict that Hui acted with scienter under § 10(b) regarding the financial statements.***

■ Knowledge or recklessness is required for a finding of scienter under § 10(b). *See Nelson v. Serwold,* 576 F.2d 1332, 1337 (9th Cir.1978).

Reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1569 (9th Cir.1990) (en banc) (internal quotation marks and citations omitted). In granting JMOL in Hui's favor, the district court found that:

[T]here [was] no evidence that Mr. Hui had anything to do with the preparation of [the] financial statements or the creation of the actual numbers.... [Others] prepared the statements and presented them to him.... [H]e signed the statements that were presented to him and did so without making any corrections.

■ Viewing the evidence in the light most favorable to plaintiff, we conclude that the district court erred in finding that the evidence was not sufficient for a finding of scienter. Plaintiff first contends that "by demonstrating a defendant's motive and opportunity to engage in securities fraud," scienter can be shown.[7] *Cf. Greenwald v. Wells Fargo & Co. (In re Wells Fargo Securities Litigation),* 12 F.3d 922, 931 (9th Cir.1993) (holding that, at least at the pleading stage, "allegations of motive and opportunity in the complaint are sufficient to establish a basis for inferring ... fraudulent intent"). In interpreting the heightened pleading standards under the Private Se-

statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in

any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant.

15 U.S.C. § 78r(a).

7. Plaintiff also asserts that Hui's statements in the press releases are actionable. Because the press release statements were derived from the financial statements, the arguments presented here are equally applicable to the press release statements.

curities Litigation Reform Act of 1995 ("PSLRA"), we determined in *Janas v. McCracken* (*In re Silicon Graphics Inc. Securities Litigation*), 183 F.3d 970, 978–79 (9th Cir.), *reh'g and reh'g en banc denied,* 195 F.3d 521 (9th Cir.1999), that a mere showing of motive and opportunity would not suffice to survive a motion to dismiss. *In re Silicon Graphics* erected a more stringent pleading standard than previous Ninth Circuit case law required. *Compare id.* at 974, 977–79, *with In re Wells Fargo Securities Litigation,* 12 F.3d at 931. Because the PSLRA did not alter the substantive requirements for scienter under § 10(b), however, the standard on summary judgment or JMOL remains unaltered by *In Re Silicon Graphics. See In re Silicon Graphics,* 183 F.3d at 975–76.

We conclude that the demonstration of Hui's possible motive, combined with the red flags of Everex's financial condition, are sufficient to withstand a motion for JMOL. *Cf. id.* at 977–79 (noting that while motive and opportunity alone are insufficient to show scienter at the pleading stage, they may still be considered as circumstantial evidence of such). First, Hui potentially had a motive to inflate sales to raise financing. Specifically, Everex had a motivation to overstate its net value so as not to violate loan covenants with its principal lender CIT, as well as to improve the prospects of an increased credit line with CIT to fund its FY 1992 business plan. CIT required Everex to maintain a net worth of $90 million and, at the end of the fourth quarter of FY 1991, Everex had a net worth *i.e.,* shareholder equity, of $92.1 million. Given that Everex projected possible first quarter FY 1992 losses of $2.1 million, resulting in a net worth of exactly $90 million, Hui had the incentive to overstate Everex's value.[8]

Second, there is evidence indicating that Hui signed the financial statements in the face of potentially alarming information

concerning Everex's financial condition. We have held that an actor is reckless if he "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [he] could have done so without extraordinary effort." *Burgess v. Premier Corp.,* 727 F.2d 826, 832 (9th Cir.1984) (internal quotation marks and citations omitted).

Even though the Everex "Strategic Plan" for FY 1992 stated that "Everex's management [was] optimistic about the future," it also noted that Everex was "facing a crisis." Furthermore, the "Strategic Plan" listed various weaknesses of the company, including "lack of vertical accountability amongst staff" and "no internal audits." The lack of accountability is highlighted by Everex's outside auditor's report on Everex's internal financial controls. Even though the auditor did not conclude that Everex's financial statements were generated on the basis of faulty accounting practices, it found irregularities in customer credits, that sales projections were overly optimistic, and that there was no appropriate system for dealing with obsolete inventory and reserves.

We find the evidence sufficient for a jury to conclude that Hui "had reasonable grounds to believe material facts existed that were misstated or omitted...." *Id.* In particular, the potential alarm signals in the face of Everex's possible financial crisis could cast doubt on Everex's optimistic outlook and support a finding of scienter. *Cf. In re Silicon Graphics,* 183 F.3d at 985 (holding that, at the pleading stage, allegations must show that "officers had actual or constructive knowledge of ... problems that would cause their optimistic representations to the contrary to be consciously misleading"). Finally, Hui cannot simply argue that he looked the other way. *See*

---

**8.** Additionally, Everex executives recognized that the Company's cash flow and existing lines of credit were potentially inadequate to fund Everex's fiscal 1992 business plan. In

order for Everex to meet its optimistic projections, additional funding needed to be raised. This represents further motivation for Hui to inflate the figures on the financial statements.

*In re Software Toolworks*, 50 F.3d at 624–25 (indicating that where reports raised legitimate red flag, defendants were required to take further steps to ensure the accuracy of the disputed data to negate intent). For the foregoing reasons, the district court erred in granting JMOL to Hui on the § 10(b) claim.

### C. The district court erred by granting JMOL on the § 20(a) claim against Hui.

■ In order to prove a prima facie case under § 20(a), plaintiff must prove: (1) a primary violation of federal securities laws (not at issue here); and (2) that the defendant exercised actual power or control over the primary violator (here, Everex). *See Hollinger*, 914 F.2d at 1575.[9] "Whether [the defendant] is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir.1994) (internal quotation marks and citations omitted).

■ Plaintiff need not show that the defendant was a culpable participant in the violation, but defendant may assert a "good faith" defense. *Hollinger*, 914 F.2d at 1575; *see Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir.1996). Thus, "[t]o establish the liability of a controlling person, the plaintiff does not have the burden of establishing that person's scienter distinct from the controlled corporation's scienter." *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1398 (9th Cir.1993). "But a defendant who is a controlling person of an issuer with scienter" may assert a good faith defense by "proving the absence of scienter" and a

failure to directly or indirectly induce the violations at issue. *Id.*

■ The parties dispute whether "actual power or influence" needs to be *exercised* to render a defendant a control person. Prior to *Hollinger*, it was clear that a plaintiff needed to show actual participation to make out a prima facie § 20(a) case in this circuit. *See Buhler v. Audio Leasing Corp.*, 807 F.2d 833, 835–36 (9th Cir.1987). *Hollinger*, although not entirely abandoning the participation element, shifted the burden to the defendant to show that "she acted in good faith and did not directly or indirectly induce the violations." 914 F.2d at 1575. Thus, in order to make out a prima facie case, it is not necessary to show actual participation or the exercise of actual power; however, a defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation.

■ First, viewed in the light most favorable to plaintiff, the evidence shows that Hui had authority over the process of preparing and releasing the financial statements. The facts of the instant case fall between several cases discussing the authority prong of control person liability. In *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1441 (9th Cir.1987), we found that a group of directors had "the power to control or influence" their corporation.[10] We noted that although the directors' status as such was insufficient for a finding of control, their day-to-day oversight of company operations and involvement in the financial statements at issue were sufficient to presume control over the "transactions giving rise to the alleged securities violation." *Id.* Hui was in a similar position through his participation in the day-to-day management of Everex and his re-

9. The SEC has defined "control" to mean: "[T]he possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405.

10. Although *Wool* was effectively overruled by *Hollinger* to the extent that *Wool* required a showing of "[c]ulpable [p]articipation" to make out a prima facie case under § 20(a), the "[p]ower to [c]ontrol or [i]nfluence" prong of *Wool* still remains intact. *Wool*, 818 F.2d at 1441–42; *see Hollinger*, 914 F.2d at 1575.

view and signature of the financial statements.

In *Paracor Finance*, we held that a CEO of a company was not a control person with respect to the projections made in a private placement memorandum. *See Paracor Fin.*, 96 F.3d at 1161–64. In that case, the CEO had worked on the projections, but only before he knew they would be used in the private placement memorandum. *See id.* Additionally, the CEO was not authorized by his company to work on the private offering and did not even read the memorandum. *See id.* Although Hui did not work on the projections and did not make much of a review of the financial statements, unlike the Paracor CEO, Hui was authorized to participate in the release of the financial statements and signed off on the statements as correct. Indeed, in *Paracor Finance*, we found that the company's president was not entitled to summary judgment where he signed a purportedly false statement. *See id.*

*Burgess* is also distinguishable. There, a director of a corporation was held not to be a control person, in part because he did not prepare the prospecti at issue. *See Burgess*, 727 F.2d at 832. In *Burgess*, however, the director was not involved in the corporation's day-to-day business. *See id.* More importantly, *Burgess* was decided before *Hollinger*; thus, in order to be a control person under *Burgess*, participation—in addition to actual authority— was required to be shown. *See id.* Here, we find that Hui's actual authority over the preparation and presentation to the public of the financial statements is sufficient to make out a prima facie case.

 Furthermore, Hui is not entitled to a good faith defense, because he cannot show that he "acted in good faith and did not directly or indirectly induce the violations." *Hollinger*, 914 F.2d at 1575 (citing 15 U.S.C. § 78t(a)); *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1434 (9th Cir.1995) (noting that the good faith "defense is unavailable even when the defendants who induced the fraud believed in good faith that they were not perpetrating a fraud").[11] Without commenting on whether Hui induced the alleged violations, because Hui cannot show an undisputed lack of scienter, we conclude that Hui cannot show that he acted in good faith. *See Arthur Children's Trust*, 994 F.2d at 1398 (noting that defendant has burden of proving absence of scienter).

Thus, we conclude that plaintiff has made out a prima facie case of a § 20(a) violation and that the district court erred in granting JMOL in favor of Hui on this claim.

**D. The district court did not abuse its discretion in granting Hui's motion in limine regarding his sales of Everex stock.**

 Plaintiff argues, without citing any authority, that Hui's sales were suspicious in time and amount and should have been admitted. Defendant Hui correctly notes, however, that under our case law, the sales could not support a finding of scienter as a matter of law because they were made pursuant to a divestiture program whereby Hui sold the same amount of stock every quarter starting well before the class period.[12] *See Schneider v. Vennard (In re Apple Computer Securities Litigation)*, 886 F.2d 1109, 1117 (9th Cir.1989) (holding that when sales are "consistent in timing and amount with a past pattern of sales"

---

11. In *Kaplan* we stated that absence of scienter precludes a finding of § 20(a) liability. *See* 49 F.3d at 1382–83. If that statement were a holding, it would contradict the wording of the statute and our subsequent holding in *Nordstrom*. That statement in *Kaplan*, however, can be regarded as dicta because the CEO-defendant in that case did not direct the making of the public statements. *See id.*

12. Thus, plaintiff's statement that Hui had sold a greater percentage of his holdings than ever before during the class period is immaterial given that the only reason for this was that Hui's overall holdings were decreasing due to his continued selling of shares.

there can be no inference of scienter); *In re Silicon Graphics,* 183 F.3d at 986 ("Although unusual or suspicious stock sales by corporate insiders may constitute circumstantial evidence of scienter, insider trading is suspicious only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.") (internal quotation marks and citations omitted). Thus, the district court did not abuse its discretion in precluding introduction of this evidence.

**E. *The district court did not abuse its discretion in prohibiting Howard from impeaching Hui's brother with his deposition testimony.***

 The district court excluded evidence from a deposition of John Hui, defendant's brother, because of plaintiff's failure to give proper notice of the deposition. After defendants' counsel informed plaintiff's counsel that she would have to postpone the deposition to appear at a hearing on January 24, 1996, plaintiff's counsel continued to insist on going forward with the deposition, despite defendants' counsel's clear indication of her understanding that the deposition had been continued.

Although there is some dispute over whether or not plaintiff's counsel thought the deposition had been continued, the record amply supports that the district court did not abuse its discretion in excluding the evidence pursuant to the "reasonable notice" requirement of Fed.R.Civ.P. 30(b)(1). *See Okubo v. Reynolds (In re*

*Letters Rogatory from the Tokyo Dist. Prosecutor's Office )*, 16 F.3d 1016, 1019–20 (9th Cir.1994) (examining the reasonable notice requirement of Rule 30(b)(1)).

**F. *The district court did not err in granting summary judgment on Howard's § 20(a) claim against Wong on the ground that Wong was not a control person of Everex.***

 Wong served as a director for less than three months during the class period. Plaintiff simply points to Wong's general level of control but provides no specific indication that Wong supervised or had any responsibility for the preparation of the financial statements.[13] Thus, plaintiff has not shown that Wong had the requisite actual authority over the preparation of the financial statements necessary to find him a control person. *See Hollinger,* 914 F.2d at 1575 (noting this requirement). The district court did not err in granting summary judgment in favor of Wong.

**G. *The district court did not err in not granting leave to amend the complaint.***

Plaintiff contends that the district court improperly dismissed her § 10(b) claims pertaining to Hui's statements regarding the development of new computer systems. As defendants correctly note, however, there is no indication that (1) plaintiff ever made such claims; (2) the district court dismissed any such claims;[14] or (3) plaintiff requested leave to add such claims.

---

**13.** Although plaintiff notes that Wong "reviewed and approved" the first quarter fiscal 1992 financial statements as a member of the Board, such activity does not rise to a level of supervision or participation sufficient for a § 20(a) violation. Although ownership of stock and a position as a Board member are relevant to ascertaining control, here, there is no showing that Wong was active in the day-to-day affairs of Everex or that he exercised any specific control over the preparation and release of the financial statements. *See Paracor Fin.,* 96 F.3d at 1163 (finding no control on the part of CEO where plaintiffs intro-

duced "no evidence that [the CEO] exercised direct or indirect control over" the transaction at issue "in any way"); *cf. Wool,* 818 F.2d at 1441–42 (finding control where directors were involved in day-to-day activities and had direct involvement with alleged false statements).

**14.** Rather, the district court, after dismissing claims for aiding and abetting and the § 10(b) claim against Wong, merely mentioned that among the remaining claims were those against Hui for statements with respect to the financial statements.

Thus, there was no error because no such claims were ever asserted and there is no indication that plaintiff requested to leave to amend her complaint to assert them. *See Westlands Water Dist. v. Firebaugh Canal,* 10 F.3d 667, 677 (9th Cir.1993) (holding that district court did not abuse its discretion in not granting leave to amend where party failed to indicate its desire to amend the complaint to allege new theories prior to the district court's final decision).

### H. *The district court did not err in permitting new affirmative defenses to be asserted after the discovery "cut-off" date.*

■ Initially, it should be noted that although the affirmative defenses were asserted after the discovery "cut-off" date, by stipulation of the parties, discovery was still underway at the time the defenses were asserted. The district court noted that the late-pleaded defenses were partly its fault, because after dismissing claims from the first amended complaint in response to defendants' motion to dismiss the amended complaint, it did not set a deadline for plaintiff to amend its complaint again.[15] Because plaintiff decided not to amend her complaint and gave no notice of such, defendant was simply waiting to respond to the amended claims. After defendant finally responded, the district court struck several of the affirmative defenses as prejudicial. Plaintiff has not made any specific arguments as to why the remaining affirmative defenses were prejudicial. When there is no prejudice from the delay in asserting affirmative defenses, we have held that it is proper for the district court to allow them. *See Ledo Fin. Corp. v. Summers,* 122 F.3d 825, 827 (9th Cir.1997) (finding that defendant was properly permitted to raise defense for first time in summary judgment motion where plaintiff was not prejudiced). Thus,

the district court did not err in striking only the prejudicial newly-raised defenses.

### I. *The district court erred in dismissing Howard's claims against Wong's International and Gatcombe for lack of personal jurisdiction.*

■ Plaintiff sued Wong's International and Gatcombe under §§ 10(b) and 20(a) on the basis that they sold Everex stock after Hui allegedly tipped Wong, who was a director of Wong's International and Gatcombe.[16] The district court dismissed the claims against these defendants for lack of personal jurisdiction.

Plaintiff correctly argues, however, that the trading of stock on a United States exchange by an actor who knowingly has inside information is "fair warning" to be subjected to United States jurisdiction. In *SEC v. Euro Sec. Fund, COIM, SA,* No. 98 CIV. 7347(DLC), 1999 WL 76801 (S.D.N.Y. 1999), for example, the plaintiff alleged that corporate officers of a foreign corporation traded on the basis of material, nonpublic information. *See id.* at *2. On this basis, the court found that "there is little question that it is proper for this Court to exercise personal jurisdiction over them for claims arising out of those trades." *Id.*

■ We agree. A defendant who is alleged to have knowingly traded on an American exchange on the basis of inside information has purposefully availed himself of the instrumentalities of United States commerce and can reasonably expect to be haled into an American court. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (adopting purposeful availment requirement); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (noting

**15.** Plaintiff correctly notes, however, that the district court provided from the bench "thirty days leave to amend against Mr. Wong." Apparently, the court and defendants overlooked this deadline; thus, given this understanding,

the excuse for filing the answer "late" is still tenable.

**16.** Gatcombe is the wholly-owned subsidiary of Wong's International.

that jurisdiction is appropriate when defendant reasonably expects being haled into court).

 Defendants' reliance on *AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir.1996), is misplaced. There, we held only that mere ownership of shares of a domestic corporation is insufficient to establish personal jurisdiction. *See id.* at 589–91. Second, defendants' argument that all shareholders in a public company would be subjected to jurisdiction on the theory presented here is simply wrong. Rather, only stockholders who traded on the basis of material, non-public information would have the necessary contacts for personal jurisdiction. Thus, the district court erred in dismissing Wong's International and Gatcombe for lack of personal jurisdiction.[17]

## IV. Conclusion

 The district court erred in concluding that Hui did not make a statement within the scope of § 10(b). Additionally, it erred in concluding that the evidence would not support that Hui acted with scienter and was a control person. Finally, the district court erred in dismissing Wong's International and Gatcombe for lack of personal jurisdiction. The district court did not err or abuse its discretion with respect to any of the other issues presented.[18] Each party shall bear her, his, or its own costs on appeal. We this affirm in part, reverse in part, and remand

for further proceedings consistent with this opinion.

**AFFIRMED in part, and REVERSED and REMANDED in part.**

---

17. Although Wong's International did not itself trade in Everex stock during the class period, its wholly-owned subsidiary, Gatcombe, did. Although jurisdiction over a subsidiary does not automatically provide jurisdiction over a parent, *see Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177–78 (9th Cir.1980), where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well, *see Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir.1984). Because it appears, at the pleading stage, that Gatcombe is merely a shell that is entirely controlled by Wong's International, we disre-

gard Gatcombe's separate identity for personal jurisdiction purposes. *See id.*

18. Plaintiff asserts in several footnotes in her brief that the district court erred in excluding alleged evidence of tipping. She has, however, presented no legal argument to support this assertion. We thus conclude that plaintiff has waived any such contention. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir.1986) (holding that this court "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief").