

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-2005

# In Re: Tyson Foods

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3305

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Tyson Foods " (2005). *2005 Decisions.* Paper 247.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/247

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  04-3305

IN RE: TYSON FOODS, INC. SECURITIES LITIGATION;
AETOS CORPORATION;
PELICAN LIMITED PARTNERSHIP;
STARK INVESTMENTS L.P.;
SHEPHERD INVESTMENTS INTERNATIONAL LTD.

v.

TYSON FOODS, INC.; JOHN TYSON;
LES R. BALEDGE; DON TYSON;
MANAGEMENT RISK TRADING LP

Aetos Corporation;
Pelican Limited Partnership;
Stark Investments, L.P.;
Shepherd Investments International, Ltd.,
class representative,

Appellants

On Appeal From the United States District Court
For the District of Delaware
(D.C. Civ. Action No. 01-cv-425)
District Judge: Hon. Sue L. Robinson, Chief Judge

Argued September 13, 2005

BEFORE: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Opinion Filed:   November 9, 2005)

---

Counsel:        Michael H. Schaalman [Argued]
                Quarles & Brady
                411 East Wisconsin Avenue
                Suite 2040
                Milwaukee, WI  53202

                Karin E. Fisch
                Abbey Gardy
                212 East 39th Street
                New York, NY  10016

                John L. Reed
                Edwards & Angell
                919 North Market Street
                14th Floor
                Wilmington, DE  19801
                *Counsel for Appellants*

                David F. Graham [Argued]
                James W. Ducayet
                Anne E. Rea
                Melanie E. Walker
                Sidley, Austin, Brown & Wood
                10 South Dearborn Street
                Bank One Plaza
                Chicago, IL  60603
                *Counsel for Appellees*

---

OPINION OF THE COURT

SMITH, *Circuit Judge*:

On March 29, 2001, Tyson Foods, Inc. ("Tyson Foods"), the nation's largest poultry distributor, issued a press release announcing its intention to terminate a $4.7

billion merger agreement with IBP, Inc. ("IBP"), the nation's largest beef distributor. The press release included a termination letter addressed to IBP executives, which was signed by Les Baledge, Tyson Foods' Executive Vice President and General Counsel. The letter accused IBP of failing to disclose the gravity of an SEC investigation at the time of the agreement and neglecting to correct earlier misstatements in its SEC filings. The letter stated that as a result of its reliance on IBP's "misleading statements" in the earlier filings, Tyson Foods "believed" it had been "inappropriately induced to enter into the Merger Agreement." That press release and attached termination letter sparked a series of lawsuits by IBP shareholders who alleged that the documents contained material misrepresentations and omissions in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and 78t, and Rule 10b-5 promulgated thereunder. The District Court consolidated the cases and named Aetos Corporation, Pelican Limited Partnership, Stark Investments, L.P., and Shepherd Investments International, Ltd. as lead plaintiffs ("Shareholders"). The case was subsequently certified as a class action.

On cross-motions for summary judgment, the District Court concluded that Senior Chairman Don Tyson and Chief Executive Officer John Tyson did not "make" the alleged misrepresentations and that Baledge did not act with the requisite scienter in issuing the press release and termination letter for § 10(b) liability to attach. The Court therefore granted summary judgment in favor of the Tysons, Baledge, and Tyson Foods. The Shareholders now appeal that decision.

The Shareholders' argument is three-fold. First, with respect to the Tysons' liability, they argue that the Tysons participated in "making" the alleged misrepresentations by instructing Baledge to issue the press release and then failing to correct the false statements contained therein. Second, the Shareholders contend that there is at least a genuine issue of material fact as to what Baledge knew and whether he acted with the requisite scienter. Third, they claim that Tyson Foods is primarily liable for misrepresentations in a corporate press release. Because we find that the District Court properly decided each of these issues, we will affirm.[1]

Section 10(b) of the Securities Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated pursuant to § 10(b), provides that, in connection with the purchase or sale of any security, "[i]t shall be unlawful for any person, directly or indirectly . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements

[1] The District Court exercised jurisdiction over this action pursuant to section 27 of the Securities Exchange Act, 15 U.S.C. § 1331. Because the District Court entered a final order granting summary judgment in favor of all defendants, we have jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of a District Court's order granting summary judgment is plenary. *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir. 2003). We apply the standard set forth in Federal Rule of Civil Procedure 56(c), under which we may affirm the District Court's order if, when viewing the evidence in the light most favorable to the non-moving party, there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

made, in light of the circumstances under which they were made, not misleading...." 17 C.F.R. § 240.10b-5(b). To prove a violation of § 10(b) and Rule 10b-5, the plaintiff must establish that the defendant, acting with knowledge or recklessness, made a misrepresentation or omission of a material fact on which the plaintiff reasonably relied and which resulted in damage. *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir. 1996).

There are two statements from the attached termination letter that are at issue in this case: (1) "Unfortunately, we relied on that misleading information in determining to enter the Merger Agreement," and (2) "Consequently, whether intended or not, we believe Tyson Foods, Inc. was inappropriately induced to enter into the Merger Agreement." For purposes of this appeal, the question is not whether these statements are accurate or inaccurate, but rather, who made the statements and whether the maker of the statements acted with the requisite scienter.

## I.     Primary Liability of Don and John Tyson

In *Central Bank v. First Interstate Bank*, 511 U.S. 164 (1994), the United States Supreme Court addressed the availability of private claims based on secondary liability pursuant to § 10(b) and held that there is no cause of action for aiding and abetting under that section. Since *Central Bank*, courts have wrestled with the appropriate test to determine whether an individual is primarily liable for a material misstatement or omission. Whereas some courts have adopted a "bright line" test, which requires that the

5

defendant actually make the offending statement himself, others have embraced a "substantial participation" test, which permits a finding of liability where the defendant had a significant role in drafting or preparing the statements. *Cf. Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000). We need not decide here which is the more suitable test because the Tysons cannot be held liable under either standard.

Although Don Tyson made the decision to terminate the Merger Agreement at a meeting on March 28, 2001, he had no role in preparing or drafting the press release or letter to IBP. Prior to that meeting, Les Baledge had obtained two independent opinion letters from outside counsel stating that Tyson Foods had legal grounds to extricate itself from the merger and relayed to Don and John Tyson only the bare-bones message that Tyson Foods was legally entitled to terminate the agreement. Don Tyson did not inquire further into the legal basis for termination, nor did he read the press release or letter to IBP. It therefore cannot fairly be said that he substantially participated in making the statements contained in the press release.

Similarly, John Tyson did not actually make the alleged misrepresentations, nor did he substantially participate in their preparation. After the decision to terminate was made, John Tyson told Baledge "to proceed with whatever he needed to do in his role as legal representative of the company to execute the action." He did not ask Baledge how he intended to proceed, nor did he otherwise instruct him regarding the contents of the

6

letter. John Tyson did not review the press release or letter prior to their issuance. Like Don Tyson, John Tyson did not "make" the alleged misrepresentations under § 10(b). Because neither of the Tysons made or substantially participated in making the statements contained in the letter and press release, we will affirm the District Court's order granting summary judgment with respect to their liability.

## II. Primary Liability of Les Baledge

Les Baledge's involvement in the publication of the press release and termination letter raises a different issue. As General Counsel, Baledge was charged with issuing the press release and termination letter. The documents were drafted by outside counsel with Baledge's input, and Baledge signed the letter. Thus, Baledge "made" the statements included in those documents for purposes of Rule 10b-5. Nevertheless, in order for liability to attach, the Shareholders must be able to show that Baledge made the statements with "'reckless disregard for [their] truth or falsity' or with a lack of a 'genuine belief that the information disclosed was accurate and complete in all material respects.'" *Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir. 1985) (citations omitted). The recklessness standard is designed to "discourag[e] deliberate ignorance and prevent[] defendants from escaping liability solely because of the difficulty of proving conscious intent to commit fraud." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999) (citations omitted). To be reckless, a statement must "involv[e] not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary

7

care, . . . which present[] a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it." *Id.* (citations omitted).

The statements in the press release and letter did not purport to explain every conceivable reason for terminating the agreement, but rather simply served to provide the legal grounds for Tyson Foods' decision to back out of the agreement. In asserting these grounds, Baledge did not engage in an "extreme departure from the standards of ordinary care," but rather, reasonably relied upon his knowledge of the facts and circumstances relating to IBP's financial restatements and the qualified opinions of two outside law firms. Baledge's failure to inquire about Tyson Foods' business reasons for terminating the Merger Agreement and to include those reasons in the termination letter does not bear on his good faith in asserting the legal grounds for termination. As the District Court aptly explained, "omission of the business rationale does not render the disclosure of Tyson Foods' legal rationale materially misleading." *In re Tyson Foods, Inc. Sec. Litig.*, No. 01-425-SLR, at 25-26 (D. Del. June 17, 2004).

### III. Primary Liability of Tyson Foods

Having concluded that there is no primary liability on the part of any of the individual officers, the District Court properly held that Tyson Foods could not itself be primarily liable under the facts of this case. *See, e.g., Southland Sec. Corp. v. INSpire*

8

*Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004); *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995).

**IV.     Conclusion**

For the reasons set forth above, we find that the District Court properly entered summary judgment on behalf of Don and John Tyson, Les Baledge, and Tyson Foods, Inc.   We will therefore affirm the judgment in their favor.