The **NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, et al.,**
Plaintiffs,

v.

**Lisa C. BERRY, Defendant.**

**No. C 08–00246 JW.**

United States District Court,
N.D. California,
San Jose Division.

May 15, 2009.

Barbara Hart, David Harrison, and Todd Garber of Lowey Dannenberg Cohen & Hart, P.C., White Plains, NY, for Plaintiff.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

JAMES WARE, District Judge.

### I. INTRODUCTION

Plaintiffs [1] bring this putative securities fraud class action on behalf of investors who acquired Juniper Networks, Inc. ("Juniper") securities between January 15, 2003 and August 10, 2006 (the "Class Period") against Lisa Berry ("Defendant"), a former General Counsel, Vice President, and Corporate Secretary of Juniper. Plaintiffs allege that, in her capacity as a Juniper executive, Defendant engaged in the backdating of stock options and falsification of financial statements, which resulted in the systematic overstatement of Juniper's income throughout the Class Period. Plaintiffs assert claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and under Securities and Exchange Commission ("SEC") Rule 10b–5.

Presently before the Court is Defendant's Motion to Dismiss Class Action Complaint. (hereafter, "Motion," Docket Item No. 42.) The Court found it appro-

---

1. Plaintiffs are the New York City Employees' Retirement System, the Teachers' Retirement System of the City of New York, the New York City Fire Department Pension Fund, the New York City Police Pension Fund, the New York City Police Superior Officers' Variable Supplements Fund, the New York City Policy Officers' Variable Supplements Fund, the New York City Fire Officers' Variable Supplements Fund, and the New York City Teachers' Retirement System of the City of New York Variable Annuity Program (collectively, the "New York City Pension Funds").

priate to take the matter under submission without oral argument. *See* Civ. L.R. 7–l(b). Based on the papers submitted to date, the Court DENIES Defendant's Motion to Dismiss.

## II. BACKGROUND

### A. Factual Allegations

In a Complaint filed on January 14, 2008, Plaintiffs allege as follows:

Plaintiffs are individual investment funds that together comprise the New York City Pension Funds. (Complaint ¶ 15, Docket Item No. 1.) Plaintiffs purchased or acquired Juniper common stock during the Class Period and suffered damages as a result of the federal securities law violations committed by Defendant and other Juniper officers and directors. (*Id.* ¶ 21.)

Defendant was employed as Juniper's General Counsel beginning on June 18, 1999. (Complaint ¶ 22.) Beginning in July 1999, Defendant also served as a Juniper Vice President, Secretary, and member of the Stock Option Committee ("SOC"). (*Id.*) Defendant served in these roles until her departure from Juniper at the end of 2003. For the three years prior to her tenure at Juniper, Defendant served as Vice President and General Counsel of KLA–Tencor Corporation, where she engaged in stock option backdating practices. (*Id.* ¶ 23.) After her arrival at Juniper, Defendant implemented stock option backdating practices at Juniper. (*Id.*)

From June 1999 through 2003, Defendant and other Juniper senior executives falsified financial statements and backdated option grants to purchase millions of shares of stock, and then falsely reported how Juniper granted these options in order to conceal their backdating scheme. (Complaint ¶ 2.) This false reporting and concealment resulted in Juniper's material systematic overstate-ment of income from June 1999 through mid–2006, eventually requiring Juniper to restate its financial results to record $900 million in compensation expenses over a several-year period. (*Id.*)

To implement this backdating scheme, Juniper used two Stock Option Plans, both of which provided that the exercise price of a stock option would be set by the Board of Directors or a Board-designated committee. (Complaint ¶ 4.) Although the Compensation Committee was responsible for grants to officers and·directors, and the SOC was responsible for grants to non-officer employees, the actual practice was that the SOC was responsible for the selection of the exercise price for most option grants. (*Id.*) The SOC was comprised of Defendant Berry, Juniper Chief Executive Officer Scott Kriens ("Kriens"), and Juniper Chief Financial Officer Marcel Gani ("Gani"). (*Id.* ¶ 5.) Together, Berry, Kriens, and Gani caused Juniper to issue over 110 million backdated or otherwise intentionally mispriced stock options, which they concealed by filing false public filings with the SEC. (*Id.* ¶ 6.) Before leaving Juniper in 2003, Defendant cashed in her own underpriced options for millions of dollars in profits. (*Id.* ¶ 7.)

In May 2006, the Wall Street Journal and other major newspapers reported on studies released by independent financial analysts identifying Juniper as a high-risk candidate for having backdated executive stock options. (Complaint ¶ 9.) On August 10, 2006, Juniper confessed that its improper accounting for backdated option grants would require restatement of more than three years of financial results. Juniper share price dropped over 20% in response to these corrective disclosures, causing hundreds of millions of dollars of damages to investors. (*Id.*)

On the basis of the allegations outlined above, Plaintiffs allege two causes of action: (1) Violation of § 10(b) of the Exchange Act and SEC Rule 10b–5; and (2) violation of § 20(a) of the Exchange Act.

## B. *Procedural History*

On July 14, 2006, the first of several securities fraud actions against former Juniper officers and directors was filed in the Northern District of California. On November 20, 2006, these actions were consolidated as *In re Juniper Networks, Inc. Sec. Litig.,* Case No. C 06–04327 JW, 2006 WL 3365547 ("the Consolidated Action"). The New York City Pension Funds were designated as Lead Plaintiff in the Consolidated Action. On March 31, 2008, the Court granted in part and denied in part Defendants' motion to dismiss in the Consolidated Action. *In re Juniper Networks, Inc. Sec. Litig.,* 542 F.Supp.2d 1037 (N.D.Cal.2008).

On January 14, 2008, the New York City Pension Funds filed this action as a related case to the Consolidated Action, for the purposes of adding Lisa Berry as a Defendant. (Complaint ¶ 1.) On October 1, 2008, the Court denied the Juniper Defendants' motion to consolidate the Berry action with the Consolidated Action, on the ground that consolidation would prejudice Plaintiffs' ability to conduct discovery in the Consolidated Action. (*See* Docket Item No. 162 in Case No. C 06–04327 JW.)

Presently before the Court is Defendant's Motion to Dismiss.

## III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–534 (9th Cir.1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.,* 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also, McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir.2000).

Claims brought under Section 10(b) of the Exchange Act and Rule 10b–5 must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). *In re Daou Sys., Inc. Sec. Litig.,* 411 F.3d 1006, 1014 (9th Cir.2005). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

Moreover, claims brought under Section 10(b) and Rule 10b–5 must also meet the stringent pleading standards of the Private Securities Litigation Reform Act of 1995. The PSLRA amends the Exchange Act to require that a private securities fraud litigation complaint "plead with particularity

both falsity and scienter." *In re Daou*, 411 F.3d at 1014. Specifically, a complaint alleging securities fraud must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir.2002).

To plead a violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, a plaintiff must allege that (1) defendants made a material misrepresentation or omission; (2) the misrepresentation was in connection with the purchase or sale of a security; (3) the misrepresentation caused plaintiff's loss; (4) plaintiff relied on the misrepresentation or omission; (5) defendants acted with scienter; and (6) plaintiff suffered damages. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). Each of these elements must be pleaded as to each defendant. *Id.*

## IV. DISCUSSION

Defendant moves to dismiss the Complaint on the grounds that (1) Plaintiffs do not adequately plead Defendant's primary liability for any false statement or omission; (2) Plaintiffs do not adequately allege scheme liability; (3) Plaintiffs to not plead facts sufficient to give rise to a strong inference of scienter; and (4) Plaintiffs fail to state a claim for control person liability under § 20(a) of the Exchange Act.[2]

The Court considers each contention in turn.

### A. Liability Under § 10(b) and Rule 10b–5

#### 1. Primary Liability

Defendant contends that Plaintiffs have failed to plead Defendant's primary liability for violations of § 10(b) of the Exchange Act and SEC Rule 10b–5, on the ground that Plaintiffs do not allege that Defendant either made or substantially participated in the making of any material misrepresentation. (Motion at 11.)

Section 10(b) makes it unlawful for "any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe[.]" 15 U.S.C. § 78j(b). SEC Rule 10b–5, in turn, provides:

It shall be unlawful for any person ...

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

Where a plaintiff seeks to establish liability under Rule 10b–5(b) for a materially

---

**2.** Defendants also contend that the five-year statute of limitations bars any claims based on alleged misrepresentations that occurred prior to January 14, 2003. (Motion at 9.) Plaintiffs confirm, however, that they are not seeking recovery for alleged misrepresentations made prior to this date. (Plaintiffs' Opposition to Defendant's Motion to Dismiss at 3 n. 2, hereafter, "Opposition," Docket Item No. 46.) Accordingly, in considering whether Plaintiffs have stated a claim, the Court only considers misrepresentations that are alleged to have occurred on or after January 14, 2003.

misleading statement, the plaintiff must specify each statement alleged to have been misleading and the specific reason or reasons why the statement is misleading. *See* 15 U.S.C. § 78u–4(b)(1); Fed.R.Civ.P. 9(b). This is accomplished by identifying that a defendant either (a) signed a public filing containing a misstatement or (b) substantially participated or was intricately involved in the preparation of allegedly false statements. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 n. 5 (9th Cir. 2000).

In this case, Plaintiffs allege in relevant part:

Defendant drafted Juniper's false and misleading Proxy Statement in 2003, which she signed as Juniper's General Counsel, Vice President and Secretary, and the Form 4s filed with the SEC by Officer Defendants [Kriens, Gani, Sindhu, Hearst, Khosla, Levy, Sclavos, and Stensrud] which she signed on their behalf under power of attorney. (Complaint ¶ 26.) Defendant substantially participated in the creation, review, and/or signing of other Juniper SEC filings during the Class Period, which included or incorporated by reference the false and misleading financial statements. (*Id.*)

Juniper's 2003 Proxy Statement, drafted by Defendant contained several false and misleading representations, including that (a) stock options were granted a fair market value on the dates of the grants; (b) stock options would not provide value to executives unless the price of Juniper stock increased above the exercise price; (c) the option grants were administered and monitored in accordance with the Stock Option Plans; and (d) the stock options were granted to align the interests of investors and shareholders with those of Juniper's executives by linking a significant portion of the insider's compensations to the future performance of the

company, when in fact most option grants were in-the-money. (Complaint ¶ 124.)

Defendant was integrally involved in drafting, reviewing, and/or discussing Juniper's financial results contained in SEC reports and earnings releases. (Complaint ¶ 126.) During the Class Period, Defendant substantially participated in the disclosures relating to stock options and executive compensation and internal controls included in the Company's SEC reports and earnings releases. (*Id.* ¶ 140.)

Defendant was integrally involved with the preparation of the Notes Registration Statement. (Complaint ¶ 166.) Defendant's name was listed on the cover of the initial Form S–3 and amendments thereto as the designated contact of the Registrant, and signed the Notes Registration Statement as "Attorney-in–Fact" for the Officer Defendants. (*Id.*) The Notes Registration Statement reported on Juniper's financial condition and stated that the Company's ratio of earnings to fixed charges was 1.99, based on its financial results for the nine months ending on September 20, 2003. (*Id.* ¶ 168.) The financial statements for the interim periods for 2003 which were summarized and incorporated by reference in the Notes Registration Statement were materially false and misleading for failing to disclose, *inter alia*, the true facts concerning the backdating and mispricing of stock option grants, and to record compensation expenses for those grants, thereby inflating Juniper's earnings. (*Id.* ¶ 170.)

In light of the above allegations, the Court draws a distinction between misleading statements Defendant is alleged to have signed and those Defendant is alleged to have substantially participated in mak-

ing. The Court considers each type of statement in turn.

### a. Statements Bearing Defendant's Signature

■ Defendant contends that Plaintiffs' Complaint fails to specify, with sufficient particularity, how the statements that bear Defendant's signature are false or misleading. (Motion at 13–14.)

Plaintiffs allege that Defendant's signature appeared on two public filings—the 2003 Proxy Statement and the Notes Registration Statement ("Notes Statement"). (Complaint ¶¶ 26, 166.) The 2003 Proxy Statement was filed with the SEC on March 28, 2003, and the Notes Registration Statement was filed with the SEC on November 5, 2003. (Motion at 10.)

With respect to the 2003 Proxy Statement, Plaintiffs cite to a specific portion of the Proxy Statement, which states: "[s]tock options are granted at the fair market value on the date of the grant and will provide value to the executive officers only when the price of the Company's Common Stock increases over the exercise price." (Complaint ¶ 127.) Plaintiff further alleges that "this representation was materially false and misleading in failing to disclose that from June 1999 through 2003, Juniper had issued backdated in-the-money stock options to Company officers, directors, and employees who received immediate gains in value because the exercise prices of the options were below the market prices on the dates of the grants." (Id. ¶ 131.) Accordingly, the Court finds that Plaintiffs sufficiently allege the 2003 Proxy Statement was false and misleading.

With respect to the Notes Statement, Plaintiffs allege that the Notes Statement was false because it failed to disclose true facts concerning the backdating and mispricing of stock options, and to record compensation reports for those grants.

(See Complaint ¶¶ 167–70.) In particular, the Notes Statement is alleged to have incorporated by reference a number of 2002–03 Juniper financial statements, which were restated in Juniper's 2006 Form 10–K. (Id. ¶¶ 169–72.) The Notes Statement is also alleged to have overstated Juniper's ratio of earnings to fixed charges. (Id. ¶¶ 168, 171.) Accordingly, the Court finds that Plaintiffs sufficiently allege that the Notes Statement was false and misleading.

### b. Substantial Participation of Defendant

■ Defendant contends that Plaintiffs' Complaint fails to specify, with sufficient particularity, how Defendant substantially participated in the preparation of any misstatement. (Motion at 13–14.)

First, Plaintiffs allege that, in addition to signing Juniper's 2003 Proxy Statement, Defendant drafted Juniper's false and misleading 2003 Proxy Statement and the Form 4s filed with the SEC. (Complaint ¶ 26.) Unlike in *Siemers v. Wells Fargo & Co.*, No. C 05–04518 WHA, 2007 WL 760750, at *19 (N.D.Cal. Mar. 9, 2007), where the court found that the defendant's participation in commenting and editing a document was insufficient to show that he substantially participated in making a misstatement contained in the document, Plaintiffs here allege that Defendant actually *drafted* the false and misleading statement. The Court finds that, with respect to the 2003 Proxy Statement, Plaintiffs have sufficiently alleged Defendant's substantial participation in the preparation of a false and misleading statement.

Second, the Complaint alleges that Defendant was "substantially involved" in the preparation of many documents that contained material misrepresentations, which were publicly disclosed by Juniper.[3] Such an allegation is, by itself, insufficient to

---

3. (*See* Complaint ¶¶ 141–63, 173–74.)

state a claim of substantial participation, without further facts relating to Defendant's specific role in the preparation of each of the allegedly misleading statements. Rather, Plaintiffs' allegation that Defendant "substantially participated in the [misleading disclosures] included in the Company's SEC reports and earnings releases" is a legal conclusion couched in the form of a factual allegation. (*See* Complaint ¶ 140.)

Instead of directly specifying the nature of Defendant's involvement, Plaintiffs allege that "[b]y reason of her multiple positions as an officer and general counsel of Juniper and as a member of the Stock Option Committee, and because of her ability to influence the business, corporate, legal, and financial affairs of Juniper, Defendant was fully involved in, and fully informed about, the management and administration of the affairs of the company." (Complaint ¶ 27.) The Court reads this allegation to suggest that, by virtue of her position at Juniper, it can be inferred that Defendant participated in the preparation of the company's financial disclosures. In light of the heightened pleading standards of the PLSRA, however, the Court is not content to rely on such an indirect inference of participation. Accordingly, to the extent Plaintiffs seek to establish liability for alleged misstatements other than the 2003 Proxy Statement and the Notes Statement, the Court finds that Plaintiffs have failed to specify the nature of Defendant's involvement in preparing those misstatements.

In sum, the Court find that the Plaintiffs have sufficiently alleged that Defendant both signed and substantially participated in the creation of the 2003 Proxy Statement and that Defendant signed the Notes Registration Statement. Both the 2003 Proxy Statement and Notes Registration Statement are alleged to contain material misrepresentations. Plaintiffs have thus stated a claim for primary liability under § 10(b) and Rule 10b–5. With respect to Plaintiffs' allegations regarding Defendant's participation in the preparation of other Juniper documents, however, the Court finds that Plaintiffs have not alleged, with the requisite specificity, the nature and extent of Defendant's role in preparing those documents.

**2. Scheme Liability**

■ Defendant contends that Plaintiffs have not stated a claim for scheme liability, on the ground that Plaintiffs' scheme allegations seek to improperly impose "aider and abettor" liability on Defendant. (Motion at 17.) Plaintiffs contend that scheme liability can be imposed on Defendant for her alleged option backdating practices, because those practices directly caused Juniper to make misrepresentations in its SEC filings and financial statements. (Opposition at 32–33.)

■ A violation of § 10(b) of the Exchange Act and SEC Rule 10b–5 can be found in the absence of a false statement or material omission, because "conduct itself can be deceptive." *Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 128 S.Ct. 761, 769, 169 L.Ed.2d 627 (2008). "While Rule 10b–5(b) addresses liability for material misstatements or omissions, 'Rules 10b–5(a) and (c) encompass conduct beyond disclosure violations.'"[4] *In re Able Laboratories Sec.*

4. Under Rule 10b–5, it is unlawful (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

*Litig.,* No. 05–2861(JAG), 2008 WL 1967509, at *18 (D.N.J. Mar. 24, 2008) (quoting *Benzon v. Morgan Stanley Distribs., Inc.,* 420 F.3d 598, 610 (6th Cir. 2005)). To state a primary liability claim under Rules 10b–5(a) or (c), a plaintiff must allege a device, scheme or artifice to defraud, or an act, practice or course of business which would operate as a fraud, in addition to alleging the standard elements of a § 10(b) and Rule 10b–5 violation: (1) scienter; (2) connection with the purchase or sale of securities; (3) reliance; (4) economic loss; and (5) loss causation. *See Stoneridge,* 128 S.Ct. at 768–69 ("the conduct of a secondary actor must satisfy each of the elements or preconditions for liability"); *Id.* (discussing *Dura,* 544 U.S. at 341, 125 S.Ct. 1627).

In *Stoneridge,* the Supreme Court confirmed that, although primary securities fraud liability can be based on deceptive conduct, no private right of action under § 10(b) exists against those who are mere aiders and abettors in a securities fraud. *Id.* at 768 (citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)). In doing so, the Court clarified that reliance is an essential element of a securities fraud case that is brought on the basis of deceptive conduct. *Id.* at 769. Where a defendant's deceptive conduct is not disclosed to the investing public, such conduct will be "too remote to satisfy the requirement of reliance." *Id.* at 770. Primary scheme liability may result, however, where a defendant's conduct makes it "necessary or inevitable" that misrepresentations are made to investors on the basis of that conduct. *Id.*

In this case, Plaintiffs allege in relevant part:

> Defendant carried out a plan, scheme, and course of conduct which was intended to and did (a) increase the value of Juniper stock by backdating the reported grant dates and disguising this fact from investors; (b) deceive the investing public; (c) artificially inflate and maintain the market price of Juniper's securities; and (d) cause Plaintiffs to purchase Juniper's securities at artificially inflated prices. (Complaint ¶ 257.)

Defendant was responsible for overseeing Juniper's stock option granting process. (Complaint ¶¶ 24, 81.) She designed and implemented procedures to backdate stock option grants to herself and fellow Juniper employees to dates when Juniper's stock price was lower. (*Id.*) Defendant then routinely created minutes for purported SOC meetings that never occurred, and signed fictitious minutes approving each of the backdated option grants, then obtained signatures from fellow SOC members or used a stamp bearing the signatures of other SOC members. (*Id.*) By manipulating the grant dates, the meeting minutes gave the appearance that (a) the grants complied with Juniper's Stock Option Plans and public representations that Juniper did not grant in-the-money options and (b) Juniper was not required to record compensation expenses in connection with the option grants. (*Id.* ¶ 84.)

Using dates selected with hindsight between mid-June 1999 through the end of May 2003, the SOC backdated more than fifty grants to new employees. (Complaint ¶ 88.) More than $300 million in expenses associated with these grants were neither recorded nor disclosed by Juniper as a consequence of the SOC's wrongful conduct. (*Id.*) Additionally, more than $200 million in expenses were neither reported or disclosed by Juniper, which corresponded to at least nine "ongoing" grants by the SOC between 1999 and 2003. (*Id.* ¶ 89.) The backdating of these stock options led to misrepresentations in Juniper's

2003 and 2004 Proxy Statements. (*Id.* ¶¶ 111, 119, 127–37.) In addition, the backdating led to the filing of false financial reports throughout the Class Period. (*Id.* ¶¶ 141–74.) Defendant drafted and signed a false and misleading Proxy Statement in 2003, which made a misrepresentation about the nature of Juniper's stock option granting process. (*Id.* ¶¶ 26, 127.)

The truth behind the backdating at Juniper was revealed throughout 2006–07. (Complaint ¶¶ 175–219.) On December 20, 2006, Juniper announced that it had determined to record non-cash charges of approximately $900 million resulting from the improper accounting for backdated options granted between June 9, 1999 and December 31, 2003. (*Id.* ¶ 202.)

According to Defendant, the above allegations merely amount to the type of aider and abettor liability proscribed by the Supreme Court in *Central Bank* and *Stoneridge*. (Motion at 15–17.) Furthermore, Defendant contends that Plaintiffs have not alleged reliance on Defendant's allegedly deceptive conduct.[5] (*Id.* at 19.) As a predicate matter, the Court finds that Plaintiffs have alleged a deceptive scheme within the purview of Rules 10b–5(a) and (c), in that they allege Defendant's orchestration of Juniper's stock option backdating practices and her concealment of those practices through falsification of the corporate records. (*See* Complaint ¶¶ 24, 81.)

Second, the Court finds that Plaintiffs allege actionable primary liability, as opposed to nonactionable aider and abettor liability. This case is distinguishable from

*Stoneridge*, because *Stoneridge* involved deceptive behavior on the part of a third-party supplier of the company that ultimately issued misleading financial statements. Not only did the third-party in *Stoneridge* have no role in disseminating false financial information, but the Court found that "nothing [the third-party] did made it necessary or inevitable for [the company] to record the transactions as it did." *Stoneridge*, 128 S.Ct. at 770. Unlike *Stoneridge*, this case involves allegations of the systematic perpetration and concealment of improper stock option granting practices by a high-level corporate insider, who is also alleged to have had a role in the dissemination of false financial information. Indeed, given the magnitude of the financial consequences of the Juniper backdating, which are alleged to be roughly $900 million, the Court finds that it was likely "necessary or inevitable for [Juniper] to record the transactions as it did." *Id.* In other words, Defendant's alleged "behavior is at the heart of [Juniper's] false and misleading conduct." *In re Bristol–Myers Squibb Co. Sec. Litig.*, 586 F.Supp.2d 148, 170 (S.D.N.Y.2008) (distinguishing *Stoneridge* and permitting a § 10(b) conduct claim where an executive committed deceptive acts in connection with a major litigation settlement and failed to correct his company's material misstatements about the nature of the settlement).

Finally, the Court finds that Plaintiffs have satisfactorily alleged the reliance element of a scheme liability claim, because Plaintiffs allege that Defendant's deceptive conduct was communicated to the public.

---

**5.** Defendant also contends that Plaintiffs have not adequately alleged that the deceptive scheme was performed in connection with the purchase or sale of securities. (Motion at 19.) The Court, however, finds that Plaintiffs have alleged that Defendant's conduct was connected to the purchase or sale of securities.

In particular, Plaintiffs allege that Defendant administered the backdating scheme at Juniper and falsified internal Juniper records, which resulted in false information being transmitted to the investing public through Juniper's financial and proxy statements.

*See Stoneridge*, 128 S.Ct. at 769. As alleged, Defendant's falsification of SOC meeting records provided the basis for Juniper's misrepresentations about the nature of its options granting processes and the extent of its corporate earnings. Furthermore, the alleged backdating scheme was eventually revealed to the investing public. In finding that reliance is adequately alleged, the Court is persuaded by (1) the level of responsibility Defendant had at Juniper over the option granting process, (2) the magnitude of the alleged backdating, and (3) the proximity of the backdating to the investing public via the intermediacy of Juniper's false financial and proxy statements.

In sum, the Court finds that Plaintiffs have adequately alleged primary scheme liability under § 10(b) and Rules 10b–5(a) and (c).

### 3. Scienter

■ Defendant contends that the Complaint fails to plead a strong inference of scienter, as required by the PLSRA. (Motion at 19.) Plaintiffs contend that they have pleaded facts in sufficient detail to raise a strong inference that Defendant knew or was deliberately reckless in disregarding that Juniper's financial reporting was materially false and misleading. (Opposition at 15–16.)

The Supreme Court has defined "scienter" as a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193–94 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In the Ninth Circuit, recklessness (as a form of intentional conduct) has long sufficed to establish scienter for § 10(b) purposes. *Nelson v. Serwold*, 576 F.2d 1332, 1337 (9th Cir.1978).

Congress enacted the PLSRA to "deter opportunistic private plaintiffs from filing abusive securities fraud claims, in part, by raising the pleading standards for private securities fraud plaintiffs." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 973 (9th Cir.1999). Post–PLSRA, a plaintiff must allege with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C. § 78u–4(b)(2). At minimum, a plaintiff must plead particular facts giving rise to a strong inference of deliberate recklessness. *In re Silicon Graphics*, 183 F.3d at 979. In determining whether a plaintiff has adequately pleaded scienter, a court must consider whether the totality of the plaintiff's allegations, although individually lacking, gives rise to the "strong inference" required by the PLSRA. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir.2004).

Congress did not further define the "strong inference" requirement. The Supreme Court has recently clarified the requirement. To determine whether a plaintiff has alleged facts giving rise to a "strong inference" of scienter, a court must consider both (1) plausible nonculpable explanations for the defendant's conduct; and (2) inferences favoring the plaintiffs. *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2510, 168 L.Ed.2d 179 (2007). Evidence of scienter must be more than merely "reasonable" or "permissible"—it must be "cogent" and "at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* This is because "[a]n inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct." *Id.*

■ In the options backdating context, allegations that a defendant holds a high executive position, without more, do not support a strong inference of scienter. *See In re Ditech Networks, Inc. Derivative Litigation*, No. C06–5157 JF, 2007 WL

2070300, at *6 (N.D.Cal. July 16, 2007); *In re Zoran Corp. Derivative Litig.*, 511 F.Supp.2d 986, 1013 (N.D.Cal.2007). On the other hand, allegations that the defendant signed false financial documents, approved options grants, oversaw the options granting process, or was intimately involved in deciding when and to whom options would be granted may support a strong inference of scienter. *Id.*

In this case, Plaintiffs allege in relevant part:

> Defendant was Juniper's General Counsel, Vice President, Secretary, and a member of the SOC. (Complaint ¶ 22.) Defendant was placed in charge of overseeing Juniper's stock option granting process, including supervising Juniper's stock administrator. (*Id.* ¶ 81.) On December 20, 2006, Juniper announced that as a result of an Audit Committee review, Juniper had determined to record non-cash charges of approximately $900 million resulting from the improper accounting of backdated options granted. (*Id.* ¶ 202.)

> From mid-1999 through 2003, Defendant designed and implemented procedures to backdate Juniper's stock option grants to herself and her fellow officers and co-workers to a date in the past when Juniper's stock price was lower. (Complaint ¶¶ 24, 81.) Defendant routinely created minutes for purported SOC meetings that never occurred. (*Id.*) For each backdated grant from 1999 through 2003, Defendant created stock option meeting "minutes" falsely representing that the SOC had met and granted options on the date of the lowest closing price. (*Id.*) Defendant signed the fictitious minutes approving each of the backdated option grants, then presented the fictitious minutes to fellow SOC members Kriens and Gani for their signature, or stamped the minutes with a stamp she maintained bearing the other SOC members' signatures. (*Id.*)

> Defendant was integrally involved in the preparation of the Notes Registration Statement. (Complaint ¶ 166.) She was listed on the cover of the initial form S–3 and amendments thereto as the designated contact of the Registrant (i.e. Juniper), and signed the Notes Registration Statement as "Attorney-in-fact" for Kriens, Gani, Sindhu, Hearst, Khosla, Levy, Sclavos, and Stensrud. (*Id.*) The financial statements for 2002 and the interim periods for 2003, which were summarized and incorporated by reference in the Notes Registration Statement, were materially false and misleading and failed to disclose, *inter alia*, the true facts concerning the backdating and mispricing of stock option grants, and to record compensation expenses for those grants, thereby inflating Juniper's earnings. (*Id.* ¶ 170.)

> Defendant drafted Juniper's false and misleading Proxy Statements for 2000 through 2003, which she signed as Juniper's General Counsel, Vice President and Secretary, and the form 4s filed with the SEC by other Officer Defendants, which she signed on their behalf under power of attorney. (Complaint ¶ 26.)

> On at least five separate occasions Defendant received backdated in-the-money stock option grants: May 11, 2000; December 21, 2000; April 11, 2001; July 1, 2002; and March 12, 2003. (Complaint ¶ 25.) Defendant exercised certain backdated stock options and sold Juniper shares, including shares received based on the exercise of backdated stock options, while in possession of undisclosed materially adverse information about the company's backdating practices and improper accounting for stock options. (*Id.*)

Plaintiffs contend that, taken together and including numerous additional allegations in the Complaint, the above allegations support the strong inference of scienter that is required for pleading securities fraud under the PLSRA. First, as the Court previously held in *In re Maxim Integrated Products, Inc., Derivative Litig.*, 574 F.Supp.2d 1046, 1063 (N.D.Cal. 2008), a defendant's membership on a compensation committee in a position that directly oversees the option granting practices of a company, in combination with the company's admission that option grants were not properly dated, strongly suggests that the defendant was at least reckless in not knowing about the backdating. As in *Maxim*, Plaintiffs in this case allege that as Juniper's General Counsel, Vice President, Secretary, and a member of the SOC, Defendant was in a position that directly oversaw the option granting practices of Juniper. (Complaint ¶ 22.) In addition, Juniper admitted incurring non-cash charges of approximately $900 million resulting from the improper accounting of backdated options granted. (*Id.* ¶ 202.) Taken together, the admitted backdating and Defendant's alleged role in Juniper's option granting process strongly suggest that Defendant was at least deliberately reckless in disregarding that Jumper's financial reporting was materially false and misleading, which the Court finds is sufficient to support a strong inference of scienter.

■ Second, the Court finds that the $900 million in allegedly restated revenues supports an inference of scienter. The Ninth Circuit has held that, "if properly pled, overstating of revenues may state a claim of securities fraud, as under GAAP, revenue must be earned before it can be recognized." *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1016 (9th Cir.2005). While not dispositive, the issuance of restatements can be considered as evidence of scienter if they are of a sufficient magnitude. *In re Aspeon, Inc. Sec. Litig.*, 168 Fed.Appx. 836, 839 (9th Cir.2006). In this case, revenues were overstated by a considerable amount, from which it is possible to infer that those revenues were overstated intentionally so as to have an impact on the price of Juniper securities.

■ Third, Plaintiffs allege that Defendant signed and drafted the 2003 Proxy Statement and signed the Notes Registration Statement, both of which allegedly contained material misrepresentations. Allegations that Defendant signed false financial documents may support a strong inference of scienter. *In re Zoran*, 511 F.Supp.2d at 1013. Accordingly, the Court finds that Defendant's alleged involvement with the 2003 Proxy Statement and Notes Registration Statement supports a strong inference of scienter.

Fourth, Defendant allegedly granted options at suspicious times and financially benefitted from Juniper's backdating practices. (Complaint ¶¶ 89, 229.) "[U]nusual or suspicious stock sales by corporate insiders may constitute circumstantial evidence of scienter ... when it is dramatically out of line with prior trading practices at times calculated to maximize their personal benefit from undisclosed inside information." *In re Silicon Graphics*, 183 F.3d at 986. As alleged, the option "grants were numerous, consistently made at or near monthly lows [or] were just before a large increase in the stock price, and made to permit the Officer Defendants and other grantees to reap large possible gains...." (Complaint ¶ 89.) The Complaint provides detailed allegations regarding the magnitude and nature of backdated option grants to other Juniper Officers and Directors. For example, the Complaint alleges that Defendant and the SOC granted options to existing Officers and new employees on November 5, 1999, when Juniper stock was trading at

$45.52 per share, but backdated the grant to October 4, 1999, the date on which Juniper shares had traded at $30.36, the lowest price of that quarter to date. (*Id.* ¶ 90.) Plaintiffs also allege that Defendant personally received backdated option grants at least five times, and profited from the exercise of backdated options. Plaintiffs claim, however, that they have been unable to obtain specific information concerning the number of options exercised by Defendant or the profit she reaped as a result of such exercise. (*Id.* ¶ 232.) Accordingly, the Court finds that the alleged combination of Defendant's personal financial gain, the suspicious nature of the grants, and Defendant's key positions in the Company gives rise to a compelling inference of scienter.

Despite this collection of allegations, Defendant contends that the duration, magnitude and pervasiveness of the backdating practices at Juniper do not support a strong inference of fraudulent conduct by Defendant. (Motion at 23.) Instead, Defendant contends that the more plausible inference to be drawn from the long-term practice is that, once incorrectly but innocently established, it continued in place for an extended period of time because no one realized the error of the practice. (*Id.*) Nonetheless, the Court finds that, in consideration of the totality of the allegations, the inference of scienter is "at least as compelling as any opposing [non-culpable] inference one could draw from the facts alleged." *Tellabs*, 127 S.Ct. at 2510. In particular, Plaintiffs allege that Defendant (1) held key positions of responsibility at Juniper and oversaw the granting of backdated options, (2) directly financially benefitted from the backdated option grants, and (3) signed and prepared public filings containing material misrepresentations. Defendant is also alleged to have an educational background that included the study of accounting, taxation, and law, which, in light of her position at Juniper,

tends to rebut any inference that the pervasive backdating at Juniper was innocently created and perpetuated. (*See* Complaint ¶¶ 22–23, 25, 81, 227.) The Court is not persuaded that any non-culpable inference outweighs the strong inference of scienter the Court takes from the totality of Plaintiffs' allegations.

### 4. Conclusion

In light of the foregoing, the Court finds that Plaintiffs have adequately alleged both primary misstatement liability under Rule 10b–5(b) and primary scheme liability under Rules 10b–5(a) and (c). In addition, the Court finds the Plaintiffs have adequately alleged scienter pursuant to the heightened standards of the PSLRA. Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' claims under § 10(b) and Rule 10b–5.

The Court's holding, however, is limited to Defendant's alleged involvement with Juniper's 2003 Proxy Statement and Notes Registration Statement. To the extent Plaintiffs seek to establish liability based on additional alleged misstatements, Plaintiffs shall amend their Complaint to specify in greater detail the nature and extent of Defendant's purported substantial participation in making those statements consistent with this Order.

### B. *Control Person Liability Under § 20(a)*

■ Defendant contends that Plaintiffs fail to state a claim for control person liability under § 20(a) of the Exchange Act. (Motion at 24–25.)

■ Under § 20(a) of the Exchange Act, any person who controls a person liable for violating § 10(b) is jointly and severally liable for the violation. 15 U.S.C. § 78t(a). In the Ninth Circuit, to state a claim for control person liability, a plaintiff must allege that: "(1) the defen-

dant had the power to influence or control the primary violator and (2) the defendant actively used this influence or control so as to be a 'culpable participant' in the primary violation." *Knollenberg v. Harmonic, Inc.*, 152 Fed.Appx. 674, 685 (9th Cir. 2005); *see also Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir.2000). A plaintiff must allege more than the defendant's position and committee membership. *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir.1995). "A director is not automatically liable as a controlling person. There must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed." *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984).

With respect to their § 20(a) claim, Plaintiffs allege in relevant part:

> Defendant, through her position of control and authority as General Counsel, Vice President and Secretary, and a member of the SOC, was able to and did control, directly and indirectly, the content of the public statements disseminated by the Company, participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of Juniper's business affairs relating to the issuance, accounting, and disclosure of stock options. (Complaint ¶ 270.) Defendant had direct involvement in the day-to-day operations of the Company and was a corporate officer with direct involvement in the Company's reporting and accounting with respect to stock options. (*Id.* ¶ 272.) Juniper's admissions relating to its stock option granting practices establish Juniper's primary violation of section 10(b) of the Exchange act and Rule 10b–5 promulgated thereunder. (*Id.* ¶ 273.) By reason of her management position and substantial participation in the disclosures contained in Juniper's SEC filings and re-

leases, Defendant was a "controlling person" within the meaning of section 20(a) of the Exchange Act and had the power and influence to direct the management and the activities of the Company an its employees, and to cause the Company to engage in the unlawful conduct complained of herein. (*Id.* ¶ 274).

Here, the Court has permitted § 10(b) claims to go forward against Juniper and other officer and director Defendants in the related Consolidated Action. *Juniper Networks*, 542 F.Supp.2d at 1053–54. In doing so, the Court has already permitted § 20(a) claims to proceed against those other Juniper officers and directors. *Id.* This is the predicate violation upon which control person liability against Defendant Berry would be based.

In addition, the Complaint alleges that, via her multiple executive posts and membership on the SOC, Defendant "had the power and influence to direct the management and activities of the Company and its employees." (Complaint ¶ 274.) As such, the Court finds that Plaintiffs adequately allege that Defendant had and used the power to influence or control the primary violator, so as to be a culpable participant in the primary violations that took place at Juniper. Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' claim for control person liability under § 20(a) of the Exchange Act.

## V. CONCLUSION

The Court DENIES Defendant's Motion to Dismiss Plaintiffs' claims under §§ 10(b) and 20(a) of the Exchange Act and SEC Rule 10b–5.

To the extent Plaintiffs seek to establish liability based on alleged misstatements other than the 2003 Proxy Statement and Notes Registration Statement, Plaintiffs shall amend their Complaint to allege further facts relating to Defendant's substan-

tial participation in making such additional misstatements. If they so choose, Plaintiffs shall file an Amended Complaint on or before **June 5, 2009.** Otherwise, the Complaint may proceed with the two alleged misstatements as identified by the Court.

The parties shall appear for a Case Management Conference on **June 15, 2009 at 10 a.m.** On or before **June 5, 2009,** the parties shall file a Joint Case Management Statement. The Statement shall, among other things, provide the parties' proposed schedule to advance the case.