The NEW YORK CITY EMPLOYEES'
RETIREMENT SYSTEM, et al.,
Plaintiffs,

v.

Lisa C. BERRY, Defendant.

No. C 08–00246 JW.

United States District Court,
N.D. California,
San Jose Division.

Sept. 24, 2009.

Willem F. Jonckheer, Schubert & Reed LLP, San Francisco, CA, David C. Harrison, Richard W. Cohen, Lowey Dannenberg Cohen & Hart, P.C., White Plains, NY, for Plaintiffs.

James Neil Kramer, Rebecca Felice Lubens, Melinda Haag, Mozhgan Saniefar, Orrick, Herrington & Sutcliffe LLP, San Francisco, CA, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE**

JAMES WARE, District Judge.

Presently before the Court are Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint,[1] and Motion to Strike.[2] Plaintiffs timely filed Oppositions to both Motions and Defendant filed timely Replies.[3] The Court finds it appropriate to take the Motions under submission without oral argument. *See* Civ. L.R. 7–1(b).

On May 15, 2009, 616 F.Supp.2d 987 (N.D.Cal.2009), the Court issued an Order denying Defendant's Motion to Dismiss Plaintiffs' original Complaint with leave to amend. (hereafter, "Order," Docket Item No. 57.) In the Order, the Court found that Plaintiffs sufficiently alleged that Defendant both signed and substantially participated in the creation of the 2003 Proxy Statement and that Defendant signed the Notes Registration Statement. (Order, 616 F.Supp.2d at 995.) Plaintiffs thus stated a claim for primary liability under § 10(b) and Rule 10b–5. (*Id.*) As to documents other than the 2003 Proxy Statement and the Notes Registration Statement, however, the Court found that Plaintiffs did not allege with sufficient specificity the nature and extent of Defendant's role in preparing those documents to state a claim for Defendant's primary liability. (*Id.*)

On June 5, 2009, Plaintiffs filed a First Amended Complaint alleging backdating of stock options and falsification of financial statements in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b–5.[4] In the First Amended Complaint, Plaintiffs alleged additional facts relating to the nature and extent of Defendant's role in preparing a number of SEC filings. (*See, e.g.,* FAC ¶¶ 132, 163–65, 170, 174–187.)

Defendant moves to dismiss the First Amended Complaint under Fed.R.Civ.P. 12(b)(6), and to strike certain portions of the Complaint under Fed.R.Civ.P. 12(f). The Court considers the Motions in turn.

## A. *Motion to Dismiss*

Defendant moves to dismiss the First Amended Complaint on the ground that Plaintiffs have not pleaded sufficient additional facts to cure the deficiency that the Court found in the original Complaint. (Motion to Dismiss at 1–2.) Specifically, Defendant contends that Plaintiffs have merely repackaged the conclusory allegations from the original Complaint without alleging sufficient additional facts to establish Defendant's primary liability for false or misleading statements other than the 2003 Proxy Statement and the Notes Registration Statement. (*Id.*)

---

1. (hereafter, "Motion to Dismiss," Docket Item No. 75.)

2. (hereafter, "Motion to Strike," Docket Item No. 72.)

3. (*See* Lead Plaintiff's Opposition to Lisa C. Berry's Motion to Dismiss First Amended Complaint, hereafter, "Opposition to Motion to Dismiss," Docket Item No. 92; Lisa C. Berry's Reply in Support of Motion to Dismiss First Amended Complaint, hereafter, "Motion to Dismiss Reply," Docket Item No. 94; Plaintiff's Opposition to Lisa C. Berry's Motion to Strike, hereafter, "Opposition to Motion to Strike," Docket Item No. 89; Lisa C. Berry's Reply in Support of Her Motion to Strike, hereafter, "Motion to Strike Reply," Docket Item No. 93.)

4. (*See* Amended Class Action Complaint for Violation of Federal Securities Laws, hereafter, "FAC," Docket Item No. 60.)

The Court has previously articulated the general Fed.R.Civ.P. standards and pleading requirements for § 10(b) and Rule 10b–5 claims. (*See* Order, 616 F.Supp.2d at 991–92.) The Court applies those same standards in evaluating Defendant's current Motion.

To plead a violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, a plaintiff must allege that (1) the defendant made a material misrepresentation or omission; (2) the misrepresentation was in connection with the purchase or sale of a security; (3) the misrepresentation caused plaintiff's loss; (4) plaintiff relied on the misrepresentation or omission; (5) the defendant acted with scienter; and (6) plaintiff suffered damages. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005).

 Where a plaintiff seeks to establish liability under Rule 10b–5(b) for a materially misleading statement, the plaintiff must specify each statement alleged to have been misleading and the specific reason or reasons why the statement is misleading. *See* 15 U.S.C. § 78u–4(b)(1); Fed.R.Civ.P. 9(b). This is accomplished by identifying that a defendant either (a) signed a public filing containing a misstatement or (b) substantially participated or was intricately involved in the preparation of allegedly false statements. *Howard v. Everex Sys., Inc.,* 228 F.3d 1057,

1061 & n. 5 (9th Cir.2000). A plaintiff may plead, with sufficient particularity, a claim for primary liability by alleging facts showing that a defendant engaged in "extensive review and discussions" regarding allegedly false statements, or that defendant "played a significant role in drafting and editing" those statements. *In re Software Toolworks Inc. Securities Litig.,* 50 F.3d 615, 628–29 & n. 3 (9th Cir.1994); *see also Sec. and Exch. Comm'n v. Fraser,* 2009 WL 2450508, at *8 (D.Ariz.); *Sec. and Exch. Comm'n v. Berry,* 2008 WL 4065865, at *5 (N.D.Cal.); *In re Seracare Life Sciences, Inc.,* 2007 WL 935583 (S.D.Cal.); *In re Homestore.com, Inc. Securities Litigation,* 347 F.Supp.2d 790, 800 (C.D.Cal. 2004).

Here, Plaintiffs' First Amended Complaint provides a multitude of additional allegations regarding the nature and extent of Defendant's participation in the preparation of allegedly false statements. As a preliminary matter, all but seven of the misrepresentations alleged in the First Amended Complaint are either time-barred or outside the class period. (*See* Motion to Dismiss Reply at 5.) The five year statute of limitations bars any claims based on alleged misrepresentations that occurred prior to January 14, 2003.[5] Here, Plaintiffs have amended the class period to run from July 11, 2003 through August 10, 2006.[6] (*See* FAC ¶ 270.) Accordingly, in determining whether Plain-

---

**5.** Title 28 U.S.C. § 1658(b) provides that "[a] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws ... may be brought not later than the earlier of (1) 2 years after discovery of the facts constituting the violation; or (2) 5 years after such violation." Plaintiffs filed their initial Complaint on June 14, 2008. (*See* Complaint for Violation of Federal Securities Laws Against Lisa C. Berry, Docket Item No. 1.) Defendant contends that the five-year time limit applies

here, which Plaintiffs do not dispute. (*See* Order, 616 F.Supp.2d at 992 n. 2.)

**6.** Notably, the March 28, 2003 Proxy Statement was filed outside the amended class period. (*See* Motion to Dismiss at 12 n. 9.) Although the Court had previously found that Plaintiffs sufficiently alleged Defendant's substantial participation in the preparation of a false and misleading statement with respect to the 2003 Proxy Statement, the Court will not consider it as a basis for a claim of primary liability as alleged in the First Amended Complaint.

tiffs have stated a claim, the Court only considers misrepresentations that are alleged to have occurred on or after July 11, 2003.

As in the previous Order, the Court draws a distinction between misleading statements Defendant is alleged to have signed and those Defendant is alleged to have substantially participated in. In light of the large number of additional allegations in the First Amended Complaint, the Court elects to address only a representative sampling.

### 1. Statements Bearing Defendant's Signature

At issue is whether Plaintiffs have alleged sufficient facts to establish Defendant's primary liability for allegedly false and misleading statements that bear her signature.

#### a. Form S–3 and Amendments

■ In its previous Order, the Court found that Plaintiffs sufficiently pleaded their claim for Defendant's primary liability based on alleged misrepresentations contained in two SEC filings that bear Defendant's signature. (*See* Order, 616 F.Supp.2d at 993–95.) Those filings were the 2003 Proxy Statement and the Notes Registration Statement. (FAC ¶ 184.) In the First Amended Complaint, Plaintiffs allege further facts in relation to the Notes Registration Statement. (*Id.* ¶ 170.) Specifically, Plaintiffs state:

> Berry is identified on the cover page of the zero-coupon Notes Registration Statement as Vice–President, General Counsel, and Secretary, is granted power of attorney in the initial S–3, and signed as attorney-in-fact the Form S–3 Amendments as follows:

| Amendment No. | Date Signed |
| --- | --- |
| 1 | July 11, 2003 |
| 2 | August 27, 2003 |
| 3 | October 17, 2003 |
| 4 | November 5, 2003 |
| 5 | November 17, 2003 |

(*Id.*)

The Form S–3 and Amendments, and the accompanying prospectus incorporate by reference Juniper's 2002–2003 financial statements, which were restated, and also overstated Juniper's ration of earnings to fixed charges. (FAC ¶ 171) (internal citation omitted.)

With respect to Plaintiffs' new allegations regarding amendments to the Notes Registration Statement, Plaintiffs specifically allege that those documents incorporated by reference Juniper's false financial statements and overstated ration of earnings to fixed charges. (FAC ¶ 171.) Plaintiffs further allege that those statements were false and misleading because they "fail[ed] to disclose, *inter alia,* the true facts concerning the backdating and mispricing of stock option grants, and to record compensation expenses for those grants, thereby inflating Juniper's earnings." (*Id.* ¶ 156; *see also Id.* ¶¶ 7, 65–66, 74–77, 153–55, 157–58.) Finally, Plaintiffs directly allege that Defendant signed the documents as attorney-in-fact. Thus, Plaintiffs have pleaded sufficient facts to state a claim for Defendant's primary liability with respect to the five Notes Registration Statements. *See Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1061 (9th Cir.2000) (corporate officials may be held primarily liable for misrepresentations contained in documents which they have signed).

#### b. Other SEC Filings

■ In the First Amended Complaint, Plaintiffs allege in relevant part: "Berry signed several SEC filings which included or incorporated by reference the false and misleading financial statements. These documents misrepresented Juniper's stock-granting practices and the account-

ing treatment of Juniper's stock-option grants." (FAC ¶ 26.)

The Court finds that the facts alleged in this paragraph are insufficient to state a claim for Defendant's primary liability in relation to any of the filings referenced. Plaintiffs' vague reference to "several SEC filings" falls far short of the requirement that Plaintiffs specify each statement alleged to have been misleading. *See* 15 U.S.C. § 78u–4(b)(1); Fed.R.Civ.P. 9(b). Plaintiffs do not allege exactly which of the SEC filings detailed in the First Amended Complaint Defendant signed.

With the exception of the five Notes Registration Statements, all of the filings which Plaintiffs specifically allege that Defendant signed are either time barred by the statute of limitations or outside the class period. (*See, e.g.*, FAC ¶¶ 166–69, 273–73). Accordingly, the Court finds that Plaintiffs cannot establish Defendant's liability for any allegedly false or misleading statements, other than the five Notes Registration Statements, on the ground that they bear her signature.

### 2. Substantial Participation

At issue is whether Plaintiffs have alleged sufficient facts to establish Defendant's primary liability based on her substantial participation or intricate involvement in the preparation of allegedly false and misleading statements.

#### a. SEC Form 10–Q for the Second Quarter of 2003

 In the First Amended Complaint, Plaintiffs allege in relevant part:

On August 7, 2003, Juniper filed with the SEC a Report on Form 10–Q for the second quarter ended on June 30, 2003 (the "2Q 2003 10–Q"). It reiterated the false financial results in the 2Q 2003 Press Release and represented that the financial results and related disclosures were prepared in accordance with GAAP.... (FAC ¶ 141.)

The Company's accounting treatment of stock-based compensation was falsely described in Note 2 to the 2Q 2003 consolidated financial statements as follows:

.... As the exercise price of all options granted under these plans was equal to the market price of the underlying common stock on the grant date, no stock-based employee compensation cost, other than acquisition-related compensation, is recognized in net income (loss).

(FAC ¶ 142.)

The 2Q 2003 10–Q contained certifications by CEO Kriens and CFO Gani, pursuant to SOX, falsely representing that (a) the 2Q 2003 10–Q accurately portrayed Juniper's financial condition, and was not materially false or misleading, and (b) they had inspected the Company's disclosure and internal financial reporting controls and had found them to be effective "in timely alerting them to material information relating to the Company ... required to be included in our Exchange Act filings." (FAC ¶ 143.)

The foregoing statements concerning Juniper's 2Q 2003 financial results, stock options and compensation practices, and internal controls were materially false and misleading, for the reasons set forth herein at ¶¶ 7, 65–66, 74–77, and 225. (FAC ¶ 144.)

[I]n an e-mail dated July 30, 2003 from Berry to directors Kramlich, Hearst and Sclavos, CFO Gani and others, captioned "Juniper Networks Inc. 10–Q for Q2," Berry writes: "To all: Attached is the nearly final 10Q for the second quarter [of 2003]. Please review and provide any comments to me. There are calls set up to discuss the 10Q over the next week or so." Juniper admits the 2Q 2003 Form 10–Q was materially false,

and has restated its 2003 financial results. (FAC ¶ 183.)

The Court finds that, taken together, these allegations sufficiently state a claim for Defendant's primary liability for false or misleading statements in the 2Q 2003 10–Q report. First, Plaintiffs specifically identify several allegedly misleading statements in the 2Q 2003 10–Q regarding financial results, stock options and compensation practices, and internal controls. (*See* FAC ¶¶ 141–44.) Second, Plaintiffs make particularized allegations regarding backdating practices and their effect on financial records which demonstrate why statements contained in those SEC filings are misleading. (*See id.* ¶¶ 65–66, 74–77, 225.)

Finally, Plaintiffs allege facts establishing the nature and extent of Defendant's participation in preparing the 2Q 2003 10–Q. (*See* FAC ¶ 183.) Plaintiffs' allegation that Defendant sent out the 2Q 2003 10–Q to several directors and the CFO and asked them to reply to her with comments establishes that Defendant played a significant role in drafting and editing. Presumably, the reason for requesting comments was to have an opportunity to incorporate into the document any changes proposed by the recipients, indicating that Defendant played a central role in preparation of the documents. Thus, the Court finds that Plaintiffs alleged with sufficient particularity facts establishing that Defendant substantially participated or was intricately involved in the preparation of allegedly false statements in relation to 2Q 2003 10–Q. *See In re Software Toolworks Inc. Securities Litig.*, 50 F.3d 615, 628–29 & n. 3 (9th Cir. 1994).

### b. SEC Form 10–Q for the Third Quarter of 2003

In the First Amended Complaint, Plaintiffs allege in relevant part: "On or about November 14, 2003, Juniper filed with the SEC a Report on Form 10–Q for the third quarter ended September 30, 2003 (the '3Q 2003 10–Q')." (FAC ¶ 146.) Plaintiffs go on to make nearly identical allegations of materially false and misleading statements contained in Juniper's third-quarter financial results, stock option and compensation practices, and internal controls in the 3Q 2003 10–Q as those it made in the 2Q 2003 10–Q. (*See id.* ¶¶ 147–48.) In addition, with respect to the 3Q 2003 10–Q, Plaintiffs allege that "[o]n October 23, 2003, Lisa Berry emailed Gani, Neyer and directors Goldman, Hearst and Sclavos, and others a draft of Juniper's Form 10–Q for the third quarter ended September 30, 2003. Berry advised the working group of a conference to discuss the draft scheduled for October 31, 2003 . . . ." (*Id.* ¶ 184.)

The Court finds that Plaintiffs sufficiently state a claim for Defendant's primary liability for false or misleading statements in the 3Q 2003 10–Q report. As with the 2Q 2003 10–Q, Plaintiffs allege specific false and misleading statements in the 3Q 2003 10–Q,[7] and allege with sufficient particularity why those statements are false.[8] Furthermore, Plaintiffs' allegations that Defendant sent out a draft of 3Q 2003 10–Q to several directors and high level officials, and set up a conference call to discuss it with them, strongly indicates that Defendant played a significant role in drafting and editing the report. (*See id.* ¶ 184.) Thus, the Court finds that Plaintiffs alleged with sufficient particularity facts establishing that Defendant substantially participated or was intricately in-

---

7. (*See* FAC ¶¶ 146–48.)

8. (*See id.* ¶¶ 65–66, 74–77, 225.)

volved in the preparation of allegedly false statements in relation to 2Q 2003 10–Q. *See In re Software Toolworks Inc. Securities Litig.,* 50 F.3d 615, 628–29 & n. 3 (9th Cir.1994).

In sum, the Court finds that Plaintiffs have sufficiently alleged Defendant's primary liability for misrepresentations contained in the five Notes Registration Statements, the 2Q 2003 10–Q, and the 3Q 2003 10–Q.[9] Plaintiffs have not stated sufficient facts to establish Defendant's primary liability for alleged misrepresentations in any other SEC filings or documents referenced in the First Amended Complaint.

Accordingly, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss.

### B. *Motion to Strike*

■ Defendant moves to strike certain allegations from the First Amended Complaint pursuant to Fed.R.Civ.P. 12(f) on the ground, *inter alia,* that they are based on information obtained in violation of the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Motion to Strike at 1.) Defendant contends that Plaintiff has circumvented PSLRA's mandatory discovery stay by utilizing discovery from a parallel proceeding involving the same underlying facts. (Motion to Strike at 6–8.)

■ Fed.R.Civ.P. 12(f) provides that "[t]he Court may strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike, however, "are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of California, N.A.,* 290 F.Supp.2d 1101, 1152 (C.D.Cal.2003). Such motions should only be granted if "the matter has no logical connection to the controversy at issue *and* may prejudice one or more of the parties to the suit." *Rivers v. County of Marin,* 2006 WL 581096, at *2 (N.D.Cal.2006). Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike "even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f)." *Id.*

The Court finds that Plaintiffs' allegations in the First Amended Complaint are not "redundant, immaterial, impertinent, or scandalous" merely because they are based on evidence gleaned from discovery in parallel litigation. Defendant does not contend that any of the allegations she wishes to strike are untrue or obtained through illicit means. She only contends that Plaintiffs base their allegations on information obtained through discovery that is not currently available to them in Defendant's case. This does not amount to the level of prejudice that justifies striking significant portions of the First Amended Complaint.

Accordingly, the Court DENIES Defendant's Motion to Strike.

### C. *Conclusion*

The Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint

---

9. The sufficiency of Plaintiffs' claim with regard to the 10–Q reports is further bolstered by the allegation that Defendant invoked the Fifth Amendment "when asked in testimony about her role in preparing Juniper's periodic SEC filings and proxy statements." (FAC ¶ 187.) As Judge Whyte pointed out in a parallel case involving the same Defendant and underlying facts, "the Court must infer that Berry refused to answer questions about her role in preparing those documents because she prepared them." *Sec. and Exch. Comm'n v. Berry,* 2008 WL 4065865, at *5 (N.D.Cal.)

and DENIES Defendant's Motion to Strike. The allegations in the First Amended Complaint are sufficient to state claims for Defendant's primary liability under §§ 10(b) and 20(a) of the Exchange Act and SEC Rule 10b–5 to the extent that they rely on the following documents:

(1) Notes Registration Statement (Form S–3) filed July 11, 2003

(2) Notes Registration Statement (Form S–3) filed August 27, 2003

(3) Notes Registration Statement (Form S–3) filed October 17, 2003

(4) Notes Registration Statement (Form S–3) filed November 5, 2003

(5) Notes Registration Statement (Form S–3) filed November 17, 2003

(6) Form 10–Q for the second quarter of 2003 filed August 7, 2003

(7) Form 10–Q for the third quarter of 2003 filed November 14, 2003

To the extent that they rely on misrepresentations contained in documents other than those listed here, the Court finds that Plaintiffs claims are insufficient.

On **October 19, 2009 at 10 a.m.,** the parties shall appear for a Case Management Conference. On or before **October 9, 2009,** the parties shall file a Joint Case Management Statement. The Statement shall include, among other things, a good faith discovery plan with a proposed date for the close of all discovery.